Robert CRABBE et al., Appellants,

v.

Glen D. HORD, Appellee.

No. 17711.

Court of Civil Appeals of Texas, Fort Worth.

April 9, 1976.

Rehearing Denied May 14, 1976.

John Walker, Center, Vial, Hamilton, Koch, Tubb, Know & Stradley, and Robert G. Vial, Dallas, for appellants.

R. G. Guthrie, Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

Robert Crabbe and Kenneth Campbell, hereinafter termed appellants, brought suit against Glen D. Hord, hereinafter termed appellee, seeking by bill of review to set aside a prior judgment rendered against them. Therein was an award of damages to Hord because of injuries sustained in a vehicular collision.

Trial of the bill of review case was to a jury which returned a verdict. Judgment, rendered upon the verdict, was in denial of the bill of review. Therefrom Crabbe and Campbell appealed.

We affirm.

Following the collision by reason of which appellee sustained personal injuries he brought his suit for damages on October 6, 1972. He did not sue appellant Campbell. He sued appellant Crabbe and another by the name of Melton, alleged at the time to have been the employer of Crabbe and liable under the doctrine of *respondeat superior*. After service of citation was obtained Melton obtained agreement of appellee to an indefinite extension of time within which to file an answer. September 6, 1973 appellee filed an amended petition in which he added appellant Campbell as a defendant, alleging that at time of the collision Crabbe was Campbell's agent, whereby Campbell would be liable under the doctrine of *respondeat superior.*

September 14, 1973 appellee revoked his agreement for extension of time within which to answer and requested that answers in response to the citations antecedent to September 6th be filed by September 24, 1973. September 28, 1973 an attorney filed an answer for Melton. No answer was ever filed for any other party. Melton's answer contained a demand for jury trial, and he paid the jury fee. The spurious "attorney" upon whose promises both appellants were relying, and who was deemed their agent by appellee and his attorney, acted—or rather failed to act—to the undoubted prejudice of the appellants, for had he performed as a proper fiduciary there no doubt would have been answers filed in behalf of both appellants.

October 17, 1973 appellee, without notice to either of the defaulting appellants, or to Melton, moved for and obtained an order severing the action against appellants from that against Melton. Melton alone remained as the defendant in the original suit under the original number. Appellee's suit against both appellants was docketed under the new number. Under the new number

appellee secured by default a joint and several judgment against the appellants. The evidence upon damages was heard by the court, without a jury, and default judgment was rendered in appellee's behalf for a substantial amount in damages.

The postcard notice required by T.R.C.P. 239a, "Notice of Default Judgment", was not sent to either appellant. This was through mistake or inadvertence on the part of the clerk, appellee having complied with his duties under that same rule. Appellants did not know that the default judgment had been taken against them until immediately before August 14, 1974. They were made aware of the judgment by an attempt to make levy of execution in satisfaction. Circumstances shown upon trial evidenced that delay in taking action prior thereto was excused and justified as to both appellants.

By their petition for bill of review appellants made a "two-pronged" attack upon the default judgment. By one theory the judgment was directly attacked on the premise that appellee was chargeable with having prevented their making answer to the action in which default judgment had been taken. By another theory they asserted unjustified denial of opportunity to timely file a motion for new trial. This was because of the clerk's failure to notify them as required by Rule 239a.

The special issues presented to the jury posed questions, answers to which might have been shown that appellants were entitled to prevail on their bill of review. The answers did not suffice to so show this entitlement. No special issues were submitted in answer to which appellee might have established his right to recover damages in the event appellants had proved entitlement to prevail on the bill of review. The result was that appellee had "all his eggs in one basket"; where any right of recovery which appellee might have possessed would be totally extinguished for "failure of proof" in the event appellants should establish their right to have the issues of appellee's original action retried.

■ Important to our disposition of the appeal is the law applicable to the test of propriety or impropriety of granting proper motions for new trial where complaint is of a default judgment. In such motions for new trial a movant must show either (1) that to grant the new trial would work no injury upon the party who has obtained the judgment, or (2) make an offer to "do equity" in the event a new trial be granted so as to make or keep such party whole by reimbursement of his expenses attendant to the trial pursuant to which he obtained the default, and otherwise to make compensation to him for whatever relief he might show as a proper demand. See 4 McDonald, Texas Civil Practice, 1971 Rev., p. 268, "New Trial", Sec. 18.10.2, "(Grounds for New Trial—After Judgment by Default or in Defendant's Absence, Equitable Grounds)— —(II) Requirements." Indeed, we have concluded that disposition of the appeal is controlled by law in this respect. It will be the subject of our discussion at a later point of this opinion.

Appellants are restricted to rules applicable to bill of review cases under T.R.C.P. 329b, "District and County Court Cases." They properly insist that in a test of their right to prevail under the peculiar circumstances of this case should be the same as in a case where the claim was of error in overruling a timely filed motion for new trial following entry of a default judgment. They contend that because of the failure on the part of the court clerk to mail the required notices that default judgment had been taken by Rule 329a their right to relief is shown. We agree that they were aggrieved and by the fact of the clerk's dereliction they have established one element of their burden of proof. *Petro-Chemical Transport, Inc., v. Carroll*, 514 S.W.2d 240 (Tex.Sup., 1974). The holding of the cited authority was relative to the effect of T.R. C.P. 306d, "Notice of Final Judgment or Other Appealable Order." The necessary effect of the holding in the case would nevertheless make the identical rule applicable to Rule 239a. The purpose of both rules is to insure that, insofar as practicable, parties adversely affected by a final

judgment or other appealable order have an opportunity to attack the same by motion for new trial or appeal, which purpose would be unnecessarily thwarted if there can be no relief when the clerk, either intentionally or through oversight, fails to send the requisite notices promptly required by both rules.

It is in the decision of *Hanks v. Rosser*, 378 S.W.2d 31 (Tex.Sup., 1964) that we find the applicable rules to be applied to the immediate bill of review case. The rules are a combination of those of *Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124 (1939) and of those of *Alexander v. Hagedorn*, 148 Tex. 565, 226 S.W.2d 996 (1950). *Craddock* was an appeal from a default judgment where motion for new trial was timely filed. *Hagedorn* was not a case in which a motion for new trial was filed, for discovery of the fact that a default judgment was after time therefor could be permitted. It was an appeal from judgment in a later filed bill of review case. Interesting cases applicable to *Craddock* and to *Hagedorn* are *Texas State Board of Examiners in Optometry v. Lane*, 358 S.W.2d 636 (Tex.Civ.App., Fort Worth, 1962, writ ref., n. r. e.); *Kelly Moore Paint Co. v. Northeast National Bank*, 426 S.W.2d 591 (Tex.Civ.App., Fort Worth, 1968, no writ history), and *Gracey v. West*, 422 S.W.2d 913 (Tex.Sup., 1968). These cases exhibit instances where freedom from negligence of a complainant is shown where failure to take timely protective action is attributable to dereliction on the part of a court or its officials.

By the instant appeal the appellants must necessarily seek reversal by the rule of *Hanks* and found their claim upon the error in their deprivation of an opportunity to present a motion for new trial or to appeal from the default judgment. The necessity has resulted because the jury refused to make the findings requisite to appellants' entitlement to reversal of such judgment by the rule of *Hagedorn*. Had the findings been made appellants would not have the duty to offer to "do equity" as predicate to their right to relief. Relative thereto we note that the jury refused to find for appellants that either of them was prevented from making answer and contesting rendition of the default judgment before its entry as an appealable judgment by fraud, accident or wrongful act of the opposite party, unmixed with any fault or negligence of theirs. Had the appellants obtained the finding desired theirs would have been the victory. By the jury's refusal to find as the appellants desired the appellants, necessarily, must present their case as one in which their attack is upon denial of opportunity to move for a new trial. On this appellants claim they have established their case by the rule of *Hanks* and that there should have been a judgment entered on the jury's verdict for them because they had done so.

What is the rule of *Hanks*? As applied to the particular facts confronting the Supreme Court at time of the opinion it was stated that the controlling facts were: (1) whether the failure to file the answer was either intentional or the result of conscious indifference; (2) whether the defendant in default judgment was misinformed by the clerk within the time for filing the motion for new trial, and (3) was thus prevented from filing, or misled into not filing, his motion in time; (4) whether such defendant in judgment had a meritorious defense; and (5) whether the plaintiff who had obtained the default judgment would not be caused to suffer injury by the granting of the bill of review.

In the instant case the appellants obtained jury findings that they had a meritorious defense, that their failure to file answer before the default judgment was taken was not intentional or the result of conscious indifference, and that they were not informed of the default judgment taken against them. Construably, there was also finding by the jury that the appellants were prevented from filing, or misled into not filing, a timely motion for new trial. Actually the finding was that they were deprived of an opportunity to timely protest the default judgment, and we deem such finding to be sufficient, if not more than

sufficient, to satisfy the requirements that they show that they were prevented from filing, or misled into not filing, a motion for new trial. This was because of the failure of the clerk to comply with Rule 239a.

To be observed, however, is the total absence of any jury finding upon element five (5) as denominated in *Hanks*, to-wit: that the plaintiff who had obtained the default judgment would not be caused to suffer injury by the granting of the bill of review. There was not a submission of any special issue to the jury on this element. Neither was there any request therefor or complaint because of a failure of submission.

Element five (5) has been written upon in *Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124 (1939), and other cases where there was action of the court upon a motion for new trial filed after the taking of a default judgment. It is to these cases we must look in the determination of whether the trial court was correct in the conclusion that appellants failed to establish their right to prevail by their bill of review, and in rendering judgment upon the verdict against their contentions.

In view of the absence of any issue in the verdict of the jury we must consider that if it was actually made an issue upon trial it should be deemed upon the appeal as having been found by the trial court in such manner as to support the judgment. T.R. C.P. 279, "Submission of Issues".

■ For our purposes we treat the issue as having been raised although by the evidence the only instance where we find the matter mentioned was as a part of the testimony of Lancaster Smith, an attorney, when he stated that in his opinion, assuming that the cause of action of the appellee would be maintained, that appellee would not be caused to suffer injury by the court's granting appellants' bill of review. Of course, as expert testimony and furthermore clearly by way of opinion, the trial court would not thereby be bound in any way as the fact finder upon the particular question by Rule 279.

■ In the pleadings we find nothing whatever relative to the aforementioned element five (5). At no point did appellants either allege that (1) to grant the bill of review would work no injury upon appellee, nor (2) did they at any stage offer to "do equity" and make or keep appellee whole by any reimbursement of his expenses attendant to trial where he obtained the default judgment, etc. It is made obvious that in the appellants' "two-pronged" attack upon the default judgment by their bill of review that they hoped to prevail by the rules of *Hagedorn*. Apparently they overlooked this particular element, essential by the rule of *Hanks*. As we understand *Hanks* the test to be applied to the element would be identical to those of *Craddock*. The inquiry is upon probable injustice relative to deprivation of right to file a motion for new trial, as distinguished from inequity in the rendition of the default judgment itself. Therefore, in the test made upon appeal the situation is to be viewed as one where a motion for new trial had been filed in time for the trial court to have considered it and where the judgment is not void but is a valid and subsisting judgment unless and until it may be set aside with a new trial granted.

The inquiry constitutes matter considered in cases where the defendant appeared after default judgment had been entered but in time to file a motion for new trial; and where upon overruling the motion for new trial an appeal was taken. One such case is that of *Craddock* itself, in which the following language appears: (133 S.W.2d 124, 125) "Upon a hearing of the motion (motion for new trial) evidence was offered in support of all the material allegations therein contained. It was made further to appear upon the hearing that, if the judgment by default had been set aside on September 11, and a new trial granted, the plaintiff could have obtained a trial as soon as he could have done had an answer been filed before appearance day. It was also made to appear at the hearing that one of defendant's attorneys, on the date the motion was filed, offered, on behalf of his client, to pay the

plaintiff all of the expenses incurred in obtaining the default judgment. In short, it was shown, at least prima facie, that, had the default judgment been set aside and the case tried in its regular order, the plaintiff would have been in no worse position than he would have been had an answer been filed prior to the rendition of the default judgment." In *Craddock* the judgment was reversed and the cause remanded for new trial.

Like action by the appellate court occurred in *Ward v. Nava*, 488 S.W.2d 736 (Tex.Sup., 1972), in which the court wrote (p. 738) as follows: ". . . Ward has also stated in his motion that, if granted a new trial, he is willing to pay the expenses and costs of the hearing of this motion in the setting aside of such default judgment. These costs can be assessed against him by the trial court in a final judgment to be entered herein." Somewhat similar language is found in *Reynolds v. Looney*, 389 S.W.2d 100 (Tex.Civ.App., Eastland, 1965, writ ref., n. r. e.).

Contrary action, in that the appellate court refused to reverse the default judgment of the trial court, is to be observed in *Griffin v. Duty*, 286 S.W.2d 229 (Tex.Civ. App., Galveston, 1956, no writ history), where the court wrote (p. 233), as follows: "In our view defendant's failure to set up a meritorious defense in his motion is conclusive against his appeal, but it must be denied for the additional reason that he wholly failed to demonstrate—did not even attempt to demonstrate—that a new trial with consequent delay and additional expense to plaintiff would not work an inequitable injury to his adversary—an injury which defendant did not seek to mitigate by diligence in filing his motion and getting it up for hearing, nor by tendering to plaintiff his expenses incurred in connection with the first trial."

The most recent expression of the rule requiring equity of one who seeks relief from a default judgment is by the Supreme Court. *United Beef Producers, Inc. v. Lookingbill*, 532 S.W.2d 958 (Tex.Sup.,

1976). A case cited is that of *Griffin v. Duty*, supra.

In a recent instance where a local trial court granted a new trial following entry of a default judgment where the movant conceded that he did not suffer its entry through any fraud, accident or wrongful act of his opponent, we observed that part of the reason for granting a new trial was the payment by the movant of $3,000.00, which plaintiff in judgment showed he would be damaged in the event the new trial should be granted. The trial court decided that such amount had been proved as expenses and damages of the party who had obtained the default judgment, and that its payment should be required as the equitable condition upon which the new trial was granted. This occurrence would seem to serve as an example of the requirement incumbent upon a movant seeking equitable relief from a judgment taken where he was not prevented from making answer and appearing for trial, and where the judgment by default was not due to any fault, accident or wrongful act of the opposite party, unmixed with any fault or negligence of his own.

■ We hold that the trial court did not err in rendering judgment upon the verdict returned by the jury, which lacked any finding that to grant the bill of review and order a new trial would work no injury upon the opposite party, and lacked any finding (there having been no offer of appellants to do equity) as to the entitlement of appellee in order to make him whole and restore his position in the event appellants' bill of review be granted.

Most of appellants' points of error are already covered by the discussion. These are overruled. Another, complaining of failure to submit a specially requested issue to the jury in the charge of the court inquiring whether the damages allowed by the default judgment was in excessive amount is overruled as immaterial.

■ Remaining is a point of error that the court erred in denying the bill of review

because one of the defendants in the cause of action, as it existed prior to severance, had seasonably demanded a jury trial, and paid a jury fee, and that with the record in such state it was error for the damages upon default to be awarded by the court without a jury. Appellants cite authority to the effect that payment of the jury fee by one party creates the entitlement to trial by jury (at least as to unliquidated damages) of all parties. We are convinced, for the particular purpose, the error, if any, was procedural merely. Even if as applied to a regular appeal there would have been reversibility because of the failure of a jury to assess the damages, which we neither are required to hold nor do we hold, yet there would not otherwise be reversibility, and, specifically, would not entitle appellants to prevail by their bill of review. Furthermore, by amendment effective January 1, 1971, the applicable procedural rule was amended by language certainly operating to effect a waiver of a right to jury trial by any party who has not himself paid a jury fee and is in default for failure to file answer and also failing to appear for trial. See T.R.C.P. 220, "Withdrawing Cause from Jury Docket", the last sentence, "Failure of a party to appear for trial shall be deemed a waiver by him of the right to trial by jury." The point is to be overruled for either of the above reasons.

Each point of error has been severally considered. All are overruled.

Judgment is affirmed.

SPURLOCK, J., not participating.