Sam B. HUBBARD, Appellant,

v.

The FIDELITY & CASUALTY CO. OF NEW YORK, Appellee.

No. 15009.

Court of Civil Appeals of Texas.

Dallas.

Nov. 25, 1955.

Rehearing Denied Jan. 6, 1956.

Saner, Jack, Sallinger & Nichols and H. Louis Nichols, Dallas, for appellant.

Bonney, Wade & Stubblefield, and O. M. Stubblefield, Dallas, for appellee.

YOUNG, Justice.

The appeal was from entry of default judgment for $1,694.29, plus $300 attorney's fee, taken December 27, 1954, following appellee's suit on sworn account; appellant admitting timely service of citation requiring him to file answer thereto "at or before 10 o'clock A. M. of the Monday next after the expiration of 20 days after the date of service hereof * * *." Hubbard's motion to vacate said judgment by default or for new trial was filed January 21, 1955 and disposed of on January 25 by denial of same after the hearing of testimony.

In 1953 Hubbard had been engaged in building operations at Atlanta, Georgia, necessitating liability insurance; and the dispute seems to have arisen over kind of insurance requested and his liability for premiums on policies claimed as having issued to cover the work. Appellant contends that he applied only for public liability insurance with premium of approximately $100 for six months, which he duly

paid; the suit apparently involving additional workmen's compensation insurance covering a large number of employees, which Hubbard says was unnecessary, he having only three employees; and the Georgia law specifying eight or more before coverage by way of compensation insurance is required. He testified to correspondence over many months with Mr. Fambrough, appellee's Atlanta agent, about the disputed items and even subsequently to date of suit.

The content of said motion (for new trial or to vacate judgment) as regards occurrences following service of citation upon him on December 6, 1954, is sufficiently reflected in the testimony of Hubbard, now summarized: That he at once wrote to Fambrough asking for correction of Company files and dismissal of lawsuit; calling this agent's attention to the fact of mistake in that, "I hadn't taken any compensation insurance." He then visited appellee's Dallas office, which referred the whole matter back to its Atlanta agency; he meanwhile "consulting" his Atlanta attorney who couldn't handle the suit from there; not contacting a Dallas attorney, thinking the differences were "being straightened out." Then around the December holidays he phoned a Mr. Haley, Deputy Clerk of the 44th District Court, where the case was filed, that official telling defendant that he had until January 17, 1955, to file answer; that he again wrote Agent Fambrough, detailing urgency of immediate action; of going back to the 44th Court on January 10 and filing a sworn denial of the debt, Deputy Haley then advising him to employ an attorney but saying nothing about the default judgment rendered on December 27th preceding; that he next came to the courthouse on January 17 on advice of Deputy Haley that a further denial should be filed at such time; of attempting to do so, but on checking the district court records, learned of the prior entry of judgment by default. He then engaged present counsel, testifying to his intention all along to file answer and defend the suit; expressly denying the indebtedness therein alleged; further claiming a recent residence in Texas and consequent unfamiliarity with local court procedure; offering to pay all court costs incident to entry of default judgment and that he was ready and willing to try the case on its merits at any time convenient to the court.

In reply to the motion, appellee's counsel introduced several letters written by them to Hubbard; Exhibit 4 of date December 7, reading: "You have been served with Citation to appear and answer in the above styled matter. This appearance and defense may well be quite expensive. If you would like to avoid incurring the additional expenses of loss of time from work, defense, court costs, et cetera, I am sure my client, The Fidelity & Casualty Company of New York, will favorably consider any reasonable offer of settlement which you might make. Please contact this office immediately if you would like to take this course to settle this deficiency suit." Exhibit 5, letter of Hubbard to Fambrough at Atlanta, dated December 23, 1954, contains the following statement: "Joe, I have just been advised I have through next Friday to engage an attorney and reply to the mistaken suit with the Fidelity and Casualty Company. After that time if something is not done a declaratory judgment can be granted." In this connection, Exhibit 6, letter from Hubbard to Fambrough, dated December 30, says in part: "I took a liability policy with you covering the maximum number of employees were ever on our records. That was three and your auditor had the records and I later confirmed this to F. & C. here. How about changing the record there now so it will be straight?" On cross-examination of Hubbard, he testified, viz.: "Q. You could have taken out this insurance in Atlanta and forgotten about it, couldn't you? A. Well, knowing the agent as well as I did, I told him I wanted—what I wanted and I could have even signed anything he put before me because I trusted him to give me what I requested." The record evidence further infers that Deputy Clerk Haley remembered nothing about any conversations had with appellant.

Under Rules 320, Texas Rules of Civil Procedure, a judgment by default may be set aside on showing of "good cause"; our Supreme Court in Craddock v. Sunshine Bus Lines, 134 Tex. 388, 133 S.W.2d 124, 126, announcing the rule to be followed in such a proceeding: "A default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; provided the motion for a new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff. This is a just rule. It prevents an injustice to the defendant without working an injustice on the plaintiff. Such a rule has the sanction of equity."

It is perhaps needless to remark that each case seeking relief from a judgment of this nature must turn on its own facts; a decision thereon either way being usually a matter of judicial discretion. Yet, and contrary to the ruling of a learned trial judge, conscientiously made, it is our opinion that the factual situation herein portrayed fully satisfies the foregoing equitable test. Surely, under the record, it cannot be said that defendant's failure to seasonably answer was intentional or occasioned by "indifference on his part." Likewise, the element of "mistake" is developed; and defendant's gratuitous statement that, due to his trust in Fambrough, "I could even have signed anything he put before me," does not necessarily constitute an admission, destructive of his over-all showing of a meritorious defense.

Defendant's motion for new trial should have been sustained, the default judgment set aside, and it is so ordered; the cause to be reinstated on regular court docket for further proceeding.

Reversed and remanded with instructions.